IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Jarred Glickstein,<br><br>                Plaintiff,<br><br>     vs.<br><br>Case Western Reserve University;<br>John Gibbons,<br><br>               Defendants. | CASE NO.: 1:18-CV-00127-SO<br><br>JUDGE SOLOMON OLIVER<br><br>**ANSWER OF DEFENDANTS CASE WESTERN RESERVE UNIVERSITY AND JOHN GIBBONS** |

For their answer to plaintiff Jarred Glickstein's complaint, defendants Case Western Reserve University ("CWRU") and John Gibbons ("Gibbons") hereby state as follows:

1.      The allegations in paragraph 1 constitute legal conclusions to which  no response is required.  To the extent a response is required, defendants deny the allegations in paragraph 1.

2.      Defendants admit that they are located within the jurisdiction of the Northern District of Ohio, Eastern Division and that some of the events in question occurred there. Further answering, defendants state that the remaining allegations in paragraph 2 constitute legal conclusions to which no response is required, and therefore deny them.

3.     Defendants admit that plaintiff was a student in the Master's program in electrical engineering at defendant Case Western Reserve University.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 3, and therefore deny them.

4.     Defendants admit that CWRU is a not-for-profit corporation with its principal place of business in Cuyahoga County, Ohio, and that it receives federal funds and operates an education program that receives federal financial assistance.  Further answering, defendants state that the remaining allegations in paragraph 4 constitute legal conclusions to which no response is required, and therefore deny them.

5.     Defendants admit that Gibbons is currently employed as the Lab Director of the Sears Undergraduate Design Laboratory at CWRU, and deny that Gibbons is presently an adjunct instructor in the electrical engineering department at CWRU.

6.     Defendants admit that plaintiff was admitted as a transfer student to the undergraduate program in electrical engineering at CWRU in the Fall of 2014, and that he was accepted into the Bachelor of Science / Master's of Science dual degree program in electrical engineering in 2015.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6, and therefore deny them.

7.     Defendants admit that plaintiff registered with CWRU's Office of Disability Resources on August 13, 2014, admit that memoranda were sent to plaintiff's professors advising them that plaintiff required double the normal amount of time on exams, a reduced-distraction testing environment, and the use of a computer for exams/note-taking, deny that plaintiff registered "diagnoses of autism and anxiety disorder," and deny that CWRU was informed prior to May 9, 2017 that plaintiff had an anxiety disorder.  To the extent paragraph 7

makes any additional factual allegations, defendants deny them.  Further answering, defendants state that when plaintiff registered with CWRU's Office of Disability Resources, he disclosed that he had "muscular weakness in [his] dominant hand" which meant that he had "trouble writing."  Consequently, plaintiff requested (and was granted) double the normal amount of time on written examinations.  Further answering, defendants state that a psychologist sent a letter to CWRU on July 7, 2014, which stated that plaintiff had "problems with social interactions and relationships, understanding social cues and making friends," and was "likely on the Autistic Spectrum."  As an accommodation, plaintiff requested to live off-campus, and that request was granted.

8.     Defendants admit the facts alleged in paragraph 8.

9.     Defendants admit that, during his tenure at CWRU, plaintiff completed his classes as required, never achieved any grade lower than "B," and did not have any disciplinary issues with CWRU's Student Conduct Office between 2014 and 2016.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9 and therefore deny them.

10.     Defendants admit that the Sears Undergraduate Design Laboratory hired Gibbons as lab director in October 2016, admit that plaintiff kept his personal items in Room 319, admit that Room 319 is located on the third floor of the Glennan building, admit that some undergraduate courses are held on the third floor of Glennan building, and deny that all electrical engineering classes and offices are located on the third floor of Glennan building.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10 and therefore deny them.

11.     Defendants admit that plaintiff sent an email to his academic advisor regarding Gibbons in December 2016, and deny all other allegations in paragraph 11.

12.     Defendants admit that plaintiff had a teaching assistant position for EECS 301 during the fall semester of 2016, admit that plaintiff no longer had that teaching assistant position in January 2017, admit that John Gibbons taught EECS 301 in spring of 2017, and deny that John Gibbons made the decision to remove plaintiff from his former teaching assistant position. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12 and therefore deny them.

13.     Defendants admit that in December of 2016, Gibbons informed plaintiff, and two other students, that they had to remove their personal items from the project rooms in the Sears Undergraduate Design Lab because the room was not intended to be used as an office, and that Jared removed his things from the project room.

14.     Defendants admit that Gibbons sent an email to plaintiff on January 11, 2017 and state that the email speaks for itself; further answering, defendants deny all remaining allegations in paragraph 14.

15.     Defendants admit that Gibbons contacted campus police regarding the missing computer on January 5, 2017, and deny the remaining allegations in paragraph 15.

16.     Defendants admit that John Gibbons and others conducted a room by room search for the missing computer in January 2017, and that during the course of that search, Gibbons retrieved property believed to be stolen.  Further answering, defendants admit that Gibbons sent an email to Detective Shemmel in regards to Detective Schemmel's ongoing investigation of the theft of the computer, and state that the email speaks for itself.  Defendants deny that plaintiff's office space on the 5th floor was "new" and deny the remaining allegations in paragraph 16.

17.     Defendants admit that, in March of 2017, Detective Schemmel attempted to obtain a search warrant for plaintiff's house from the Cuyahoga County Prosecutor's office, admit that the County did not issue that warrant, and deny that the failure to issue the warrant was due to insufficient evidence.  Defendants admit that a trace revealed the last time the computer pinged the network was December 8, 2016, admit that, on that date, Gibbons "woke up" the sleeping computer by accidentally bumping a key, which caused the computer to ping the network, and deny that Gibbons "used" the computer on that date.  Defendants further deny the allegation that "no evidence tied Jarred to the use of the missing computer." Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17 and therefore deny them.

18.     Defendants admit that in March 2017, Officer Schemmel initiated disciplinary proceedings against plaintiff with the CWRU Student Conduct Office based on allegations that plaintiff had stolen a computer and a book and had accessed certain University premises without authorization; further answering, defendants deny the remaining allegations in paragraph 18.

19.     Defendants admit that on March 11, 2017, Gibbons sent an email to Detective Schemmel concerning the ongoing investigation into the alleged theft, and state that the email speaks for itself.  Further answering, defendants deny the remaining allegations in paragraph 19.

20.     Defendants admit that Gibbons had a conversation with plaintiff on March 15, 2017, admit that Gibbons explained to plaintiff that Gibbons had been asked not to speak with plaintiff until the investigation into the theft of the computer concluded, admit that this conversation included George Daher, and deny that Gibbons used the words alleged in the complaint to convey that message to plaintiff.  Further answering, defendants deny the remaining allegations in paragraph 20.

21.     Defendants deny the allegations in paragraph 21.

22.     Defendants admit that Gibbons and Detective Schemmel exchanged emails during defendant Case's investigation between January 2017 and March 2017, including a March 11, 2017 email concerning the ongoing investigation into the alleged theft of the computer.  Any emails exchanged between Gibbons and Detective Schemmel speak for themselves.  Defendants deny the remaining allegations in paragraph 22.

23.     Upon information and belief defendants deny the allegations in paragraph 23.

24.     Defendants admit that, on April 6, 2017, Gibbons sent an email to Kaleena Schmidt, state that the email speaks for itself, and deny the remaining allegations in paragraph 24.  Further answering, defendants admit that the third floor of the Glennan Building houses the Sears Undergraduate Design Lab and is where students pick up their mail.  Defendants deny that the third floor is "the heart of the Electrical Engineering Program" for graduate students, deny that graduate students are supposed to access electronic parts there, and deny that graduate student offices are located there.

25.     Defendants admit that, on March 10, 2017, Gibbons sent an email to Detective Schemmel concerning the ongoing investigation into the alleged theft of the computer, state that the email speaks for itself, and deny the remaining allegations in paragraph 25.

26.     Defendants admit that the Student Conduct Office scheduled a disciplinary hearing for April 27, 2017 in accordance with school policy and deny the remaining allegations in paragraph 26.

27.     Defendants admit that on or about April 25, 2017, plaintiff was provided with all of the documents that the board would consider and deny the remaining allegations in paragraph 27.

28.     Defendants admit that, on April 26, 2017, plaintiff advised Kaleena Schmidt via email that he did not want to be in the same room as Gibbons.  That email speaks for itself.  Defendants deny that plaintiff told Kaleena Schmidt that he had an anxiety disorder, and deny that no effort was made to enable plaintiff to participate in the hearing by phone or video.  Further answering, defendants admit that plaintiff chose not to hear Gibbons's live testimony during the student conduct hearing on April 27, 2017 and deny that it was because of anything defendants did or did not do.

29.     Defendants admit that, during the student conduct hearing, Gibbons said that several people had asked him whether plaintiff owned a gun.  Defendants also admit that, during the student conduct hearing, Gibbons stated that he was scared of plaintiff and made a reference to the "Weatherhead Shooter."  Defendants further admit that a graduate student representative on the Board stated with regards to the "Weatherhead Shooter" remark, "My brother was on campus at that time so, yes."  Defendants deny the remaining allegations in paragraph 29.

30.     Defendants admit that, during the student conduct hearing, Gibbons was asked by a board member why he and George Daher were afraid of plaintiff, and that the words "it comes from the overall way that Jarred presents himself" formed part of Gibbons's response.  Defendants also admit that, during the student conduct hearing, Gibbons's response to a different question included the following: "Jarred is an extremely bright person.  He's not stupid but he's got some issues that he's not dealing with.  I know Kim [Yurchick] and I have both tried to approach him to get some counseling, and he completely blew it off because he didn't think he needed it, which is typical for that kind of thing."  To the extent paragraph 30 contains other factual allegations, defendants deny those allegations.

31.     Defendants deny the allegations in paragraph 31.

32.     Defendants admit that, during the student conduct hearing, Gibbons said that he had "never met somebody with such a sense of entitlement" as plaintiff, and that plaintiff believed "the whole world revolves around him."  Defendants deny the remaining allegations in paragraph 32.

33.     Defendants admit that, during the student conduct hearing, Gibbons described an interaction with plaintiff, saying: "he was in my face yelling at me and he was not afraid to let his feelings be known and he wasn't holding back.  And I could tell that this could escalate to something physically violent if I wasn't careful."  Defendants deny the remaining allegations in paragraph 33.

34.     Defendants admit that retaliation was advanced as one possible motive for plaintiff to steal the computer, admit that Gibbons was not asked why plaintiff would retaliate by taking something that did not belong to Gibbons, and deny the remaining allegations in paragraph 34.

35.     Defendants admit that, during the student conduct hearing, the board determined that plaintiff had not been asked to leave two prior universities, and deny the remaining allegations in paragraph 35.

36.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 and therefore deny them.

37.     Defendants admit that Kaleena Schmidt prepared an investigation summary which found no *direct* evidence but sufficient circumstantial evidence to proceed with the disciplinary proceeding and state that the investigation summary speaks for itself.  Further answering, defendants admit that Officer Schemmel's notes from his investigation read, "there is no direct evidence the computer was taken by Glickstein.  However, in light of the circumstantial evidence

obtained during the course of this investigation and disproving the majority of Glickstein's

theories, it is likely Glickstein removed the computer from the lab."  Defendants deny the

remaining allegations in paragraph 37.

38.     Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 38 and therefore deny them.

39.     Defendants admit that on May 2, 2017, Mr. Gibbons sent an email to Kaleena

Schmidt concerning the student conduct hearing and state that the email speaks for itself.

Defendants deny the remaining allegations in paragraph 39.

40.     Defendants admit that on May 3, 2017, Mr. Gibbons sent an email to Kaleena

Schmidt concerning the student conduct hearing and state that the email speaks for itself.

Further answering, defendants admit that on May 3, 2017, Ms. Schmidt sent an email to Mr.

Gibbons and state that the email speaks for itself.  Defendants deny the remaining allegations in

paragraph 40.

41.     Defendants admit paragraph 41, except that defendants deny that the third floor of

the Glennan building houses plaintiff's program.

42.     Defendants admit that plaintiff filed an appeal of his disciplinary sanctions which

was denied, and deny that CWRU failed to accommodate plaintiff's anxiety disorder or follow

its own procedure or policies.  Further answering, defendants state that plaintiff never requested

an accommodation for his alleged anxiety disorder, and no one involved in the hearing process

knew about plaintiff's alleged anxiety disorder at any time before the appeal.  Indeed, CWRU

learned about plaintiff's alleged anxiety disorder for the first time when plaintiff's counsel sent a

letter to Ali Martin Scoufield, the chairwoman of plaintiff's hearing board, on May 9, 2017.

43.     Defendants admit that Gibbons sent an email to some faculty and staff in the electrical engineering department on May 5, 2017 and state that the email speaks for itself. Defendants deny that the email was sent to "all members of the faculty and staff in the electrical engineering department," and deny the remaining allegations in paragraph 43.

44.     Defendants admit that Gibbons sent an email to some faculty and staff in the electrical engineering department on May 5, 2017 and state that the email speaks for itself. Defendants deny the remaining allegations in paragraph 44.

45.     Defendants admit that Gibbons sent an email to some faculty and staff in the electrical engineering department on May 5, 2017 and state that the email speaks for itself. Defendants deny the remaining allegations in paragraph 45.

46.     Defendants admit the allegations in paragraph 46.

47.     Defendants admit that Gibbons emailed Gia Adeen on May 26, 2017 and state that the email speaks for itself.  Defendants also admit that Gibbons sent an email to Kenneth Loparo on May 11, 2017 and state that the email speaks for itself.  Defendants deny the remaining allegations in paragraph 47.

48.     Defendants expressly deny that Gibbons made false statements about plaintiff and further deny the remaining allegations in paragraph 48.

49.     Defendants admit that George O'Connell sent an email to, what he believed to be all of, the recipients of Gibbons's original email on July 10, 2017 and state that Mr. O'Connell's email speaks for itself.  Defendants deny the remaining allegations in paragraph 49.

50.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 and therefore deny them.

51.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 and therefore deny them.

52.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 and therefore deny them.

53.     Defendants expressly deny that plaintiff has been "excluded from his department's programs."  In fact, the opposite is true: plaintiff recently applied and was accepted to the Ph.D. program in electrical engineering at CWRU.  Further answering, defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 53 and therefore deny them.

54.     Defendants deny the allegations in paragraph 54.

55.     Defendants deny the allegations in paragraph 55.

## ANSWER TO COUNT I

56.     Defendants restate and reincorporate paragraphs 1-55 as if fully incorporated herein.

57.     Paragraph 57 states a legal conclusion to which no response is required.  To the extent a response is required, defendants deny the allegations in paragraph 57.

58.     Paragraph 58 states a legal conclusion to which no response is required.  To the extent a response is required, defendants deny the allegations in paragraph 58.

59.     Paragraph 59 states a legal conclusion to which no response is required.  To the extent a response is required, defendants deny the allegations in paragraph 59.

60.     Defendants deny the allegations in paragraph 60.

61.     Defendants admit that defendant Case is a private entity which owns, leases or operates a place of public accommodation and aver that the remaining allegations in paragraph

61 state a legal conclusion to which no response is required. To the extent further response is required, defendants deny the remaining allegations in paragraph 61.

62. Paragraph 62 states a legal conclusion to which no response is required. To the extent a response is required, defendants deny the allegations in paragraph 62.

63. Paragraph 63 states a legal conclusion to which no response is required. To the extent a response is required, defendants deny the allegations in paragraph 63.

64. Defendants deny the allegations in paragraph 64.

65. Defendants deny the allegations in paragraph 65.

66. Defendants deny the allegations in paragraph 66.

67. Defendants deny the allegations in paragraph 67.

68. Defendants deny the allegations in paragraph 68.

69. Defendants deny the allegations in paragraph 69.

## ANSWER TO COUNT II

70. Defendants restate and reincorporate paragraphs 1-69 as if fully incorporated herein.

71. Paragraph 71 states a legal conclusion to which no response is required. To the extent a response is required, defendants deny the allegations in paragraph 71.

72. Paragraph 72 states a legal conclusion to which no response is required. To the extent a response is required, defendants deny the allegations in paragraph 72.

73. Defendants deny the allegations in paragraph 73.

74. Defendants deny the allegations in paragraph 74.

75. Defendants deny the allegations in paragraph 75.

76. Defendants deny the allegations in paragraph 76.

77. Defendants deny the allegations in paragraph 77.

78.     Defendants deny the allegations in paragraph 78.

**ANSWER TO COUNT III**

79.     Defendants restate and reincorporate paragraphs 1-78 as if fully incorporated herein.

80.     Paragraph 80 states a legal conclusion to which no response is required.  To the extent a response is required, defendants deny the allegations in paragraph 80.

81.     Paragraph 81 states a legal conclusion to which no response is required.  To the extent a response is required, defendants deny the allegations in paragraph 81.

82.     Defendants deny the allegations in paragraph 82.

83.     Defendants deny the allegations in paragraph 83.

84.     Defendants deny the allegations in paragraph 84.

**ANSWER TO COUNT IV**

85.     Defendants restate and reincorporate paragraphs 1-84 as if fully incorporated herein.

86.     Defendants deny the allegations in paragraph 86.

87.     Defendants deny the allegations in paragraph 87.

88.     Defendants deny the allegations in paragraph 88.

89.     Defendants deny the allegations in paragraph 89.

90.     Defendants deny the allegations in paragraph 90.

91.     Defendants deny the allegations in paragraph 91.

92.     Defendants deny the allegations in paragraph 92.

93.     Defendants deny the allegations in paragraph 93.

**ANSWER TO COUNT V**

94.     Defendants restate and reincorporate paragraphs 1-93 as if fully incorporated herein.

95.     Defendants deny the allegations in paragraph 94.

96.     Defendants deny the allegations in paragraph 95.

97.     Defendants deny the allegations in paragraph 97.

98.     Defendants deny the allegations in paragraph 98.

99.     Defendants deny the allegations in paragraph 99.

100.    Defendants deny the allegations in paragraph 100.

**ANSWER TO COUNT VI**

101.    Defendants restate and reincorporate paragraphs 1-100 as if fully incorporated herein.

102.    Paragraph 102 states a legal conclusion to which no response is required.  To the extent a response is required, defendants deny the allegations in paragraph 102.

103.    Paragraph 103 states a legal conclusion to which no response is required.  To the extent a response is required, defendants deny the allegations in paragraph 103.

104.    Paragraph 104 states a legal conclusion to which no response is required.  To the extent a response is required, defendants deny the allegations in paragraph 104.

105.    Paragraph 105 states a legal conclusion to which no response is required.  To the extent a response is required, defendants deny the allegations in paragraph 105.  Further answering, defendants state that Ohio Revised Code Section 4112.022 speaks for itself.

106.    Paragraph 106 states a legal conclusion to which no response is required.  To the extent a response is required, defendants deny the allegations in paragraph 106.  Further answering, defendants state that Ohio Administrative Code Section 4112-5-09(C)(1) speaks for itself.

107.     Paragraph 107 states a legal conclusion to which no response is required.  To the extent a response is required, defendants deny the allegations in paragraph 107.  Further answering, defendants state that Ohio Administrative Code Section 4112-5-09(C)(3) speaks for itself.

108.     Defendants deny the allegations in paragraph 108.

109.     Defendants deny the allegations in paragraph 109.

**ANSWER TO COUNT VII**

110.     Defendants restate and reincorporate paragraphs 1-109 as if fully incorporated herein.

111.     Defendants deny the allegations in paragraph 111.

112.     Defendants deny the allegations in paragraph 112.

113.     Defendants deny the allegations in paragraph 113.

114.     Defendants deny that plaintiff is entitled to judgment, deny that plaintiff has suffered any injury, deny that plaintiff is entitled to any damages, attorneys fees, injunctive relief or any other relief, and deny each and every allegation not expressly admitted in this pleading.

**DEFENSES**

Defendants plead the following defenses together and in the alternative:

115.     The complaint fails to state a claim against defendants for which relief may be granted.

116.     Plaintiff does not have a "disability" within the meaning of the Americans with Disabilities Act, the Rehabilitation Act, or R.C. 4112.022.

117.     If plaintiff has a disability, which defendants deny, none of the individuals involved with the disciplinary hearing (including Gibbons, Kaleena Schmidt, the board members,

and any other individuals) knew or suspected that plaintiff had a disability at any time prior to

May 9, 2017, five days after the hearing board issued its decision.

118.    Defendants did not discriminate against plaintiff on the basis of disability.

Plaintiff's discipline was imposed for legitimate, non-discriminatory, non-pretextual reasons.

119.    Defendants did not discriminate against plaintiff because defendants would have

taken the same action against a student who did not have any disability.

120.    Defendants cannot be held vicariously liable for the decisions of the disciplinary

board.

121.    Plaintiff failed to adequately request any accommodations from defendants.

122.    If plaintiff did request accommodations related to the student conduct hearing

from defendants, which defendants deny, defendants made those accommodations.  If defendants

failed to make any accommodations, the requested accommodations were unreasonable.

123.    Plaintiff posed a direct threat that justified any disciplinary sanctions imposed

against him.

124.    The first cause of action fails as to defendant John Gibbons because he is a private

individual who does not own, operate, or lease a place of public accommodation.

125.    The second cause of action fails as to defendant John Gibbons because he is a

private individual to whom the Rehabilitation Act does not apply.

126.    The third cause of action fails as to defendant John Gibbons because there was no

contract between Gibbons and plaintiff.

127.    The fifth cause of action fails as to defendant John Gibbons because he is a

private individual to whom R.C. 4112.022 does not apply.

128.    Plaintiff's claims are barred by the one-satisfaction rule.

129.    Plaintiff's claims are barred by the doctrine of absolute privilege.  In the alternative, each of the allegedly defamatory statements is protected by qualified privilege.

130.    The student code of conduct does not constitute an enforceable agreement between CWRU and plaintiff.

131.    If the student code of conduct does constitute an enforceable agreement, it is a contract for private education.  CWRU did not abuse its discretion in fulfilling its duties.

132.    Each of the alleged statements is true, substantially true, or opinion, and therefore is not actionable.

133.    If the alleged statements were published, those statements were published in good faith, without actual or common law malice, and are protected by the First Amendment to the United States Constitution, the Constitution of Ohio, and Ohio common law.

134.    Plaintiff suffered no incremental harm as a result of any of the alleged publications.

135.    The statements were not published in such a way that they would reach the general public.

136.    The statements complained of are not provably or actionably false.

137.    The statements complained of were published without any negligence or other fault on the part of defendants.

138.    The publications at issue do not contain such a major misrepresentation of plaintiff's character, history, activities or beliefs that serious offense may reasonable be expected to be taken.

139.    Plaintiff's claims are barred by the doctrine of laches, unclean hands, waiver and/or estoppel.

140.    Plaintiff's claims are barred by the superseding and/or intervening conduct and/or wrongful acts of plaintiff or persons or entities other than defendants.

141.    Plaintiff's claims are barred by the comparative and contributory negligence and conduct and/or wrongful acts of plaintiff or persons or entities other than defendants.

142.    Plaintiff has failed to mitigate his damages, if any.

143.    The "American Rule" bars plaintiff from recovering his attorneys' fees.

144.    Plaintiff is not entitled to recover punitive damages because defendants did not engage in oppressive, fraudulent, or malicious conduct toward plaintiff.

145.    Any actions the defendants took were done without actual malice.  As such, the imposition of punitive damages would violate the United States and Ohio Constitutions.

146.    Defendants may have additional defenses that are not now fully known and of which they are not presently aware.  Defendants reserve the right to raise and assert additional defenses if that should become necessary or appropriate.

WHEREFORE, defendants demand that plaintiff's Complaint be dismissed and that the Court award defendants their costs and legal fees expended herein.

Dated: March 23, 2018                          Respectfully submitted,


                                               */s/ Carole S. Rendon*
                                               Carole S. Rendon (0070345)
                                               Melissa D. Bertke (0080567)
                                               Daniel R. Lemon (0097113)
                                               BAKER & HOSTETLER LLP
                                               Key Tower
                                               127 Public Square, Suite 2000
                                               Cleveland, OH  44114-1214
                                               Telephone:   216.621.0200
                                               Facsimile:    216.696.0740

                                               Attorneys for Case Western Reserve University
                                               and John Gibbons

## CERTIFICATE OF SERVICE

I hereby certify that on March 23rd, 2018, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send notification of such filing to counsel of record:

Aimee E. Gilman
Kerry M. Agins
Susan Tobin
Agins & Gilman LLC
5035 Mayfield Road, Suite 250
Lyndhurst, OH 44124
agilman@idealaw.org
kagins@idealaw.org
stobin@idealaw.org

Attorneys for plaintiff Jarred Glickstein

Dated: March 23, 2018

Respectfully submitted,

*/s/ Carole S. Rendon*
Carole S. Rendon (0070345)
Melissa D. Bertke (0080567)
Daniel R. Lemon (0097113)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
Telephone:   216.621.0200
Facsimile:    216.696.0740

Attorneys for Case Western Reserve University and John Gibbons